1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ANGELINA MORGAN MANE, a Minor, By          CASE NO. 05cv397-WQH (CAB)
     And Through Her Guardian Ad Litem, Zsuzsi
12   Bumgarner; JANA LARSEN MANE; and           **ORDER DENYING MOTION FOR**
     GEORGE MANE,                               **EXPENSES AND FEES**
13
                                    Plaintiffs,  (Doc. # 63)
14         v.

15   TRI-CITY HEALTHCARE DISTRICT;
     RAHELE MAZAREI; and UNITED
16   STATES OF AMERICA

17                                  Defendants.

18

19   HAYES, Judge:

20         Pending before the Court is Defendant United States' "Motion for United States' Award of

21   Expenses and Attorneys' Fees in Proving Requests for Admissions Established at Summary

22   Judgment" ("Motion for Expenses and Fees").  (Doc. # 63.)

23                                  **BACKGROUND**

24         On October 27, 2004, Plaintiffs filed the instant action in the Superior Court of California,

25   alleging medical malpractice against, *inter alia*, the Vista Community Clinic ("Vista") and Mary

26   Meyers, M.D.[1]  Plaintiffs alleged that due to the negligence of Defendants, Plaintiff Jana Larsen

27
     _____
28         [1]  Because Vista and Dr. Meyers were certified as federal employees for the purposes of the
     Federal Tort Claims Act, the United States was substituted as a party in their place.  Plaintiffs reached
     a settlement with the other Defendants, Tri-City Healthcare District and Dr. Rahele Mazarei.

1    Mane's uterus ruptured during her labor and her baby suffered brain damage.

2         At her deposition on August 23, 2004, Plaintiff Jana Larsen Mane ("Ms. Mane") testified:

3         I had broken out with a virus and I told [Dr. Meyers] that I wanted a cesarean.  And
     [Dr. Meyers] said that she thought that it was still a good idea to have the baby
4         vaginally, anyway . . . and she thought there would be no problem with still having the
     baby vaginally, even though I broke out with the virus.  And I was very upset, and *[Dr.
5         Meyers] said, 'Okay, I'll give you the cesarean if you want one.*'

6    (Mem. Supp. Mot. Expenses & Fees, Ex. 1 ("Mane Dep.") at 54-55 (emphasis added).)  Ms. Mane

7    also testified as follows:

8         Q: So on one visit approximately two weeks before the delivery, [Dr. Meyers] 'Okay,
     I'll give you a cesarean section,' but the next visit she reassured you that vaginally
9         would be okay?
     A: Yes.
10        Q: *And did you agree, 'Okay, we'll do it vaginally'?*
     A: *Yes. . . .*

11
12   (Mane Dep. at 55 (emphasis added).)

13        On December 19, 2005 (after the United States removed the case to this Court), Plaintiffs

14   served on the United States the report of Plaintiffs' only designated obstetrical expert witness, James

15   Balducci, M.D.  In his report, Dr. Balducci alleged only one breach of the standard of care by Dr.

16   Meyers and Vista:

17        Based on Ms. Mane's testimony, I believe that the Vista Community Clinic and Dr.
     Meyers were below the standard of care for not offering Ms. Mane an elective c-
18        section as an option for delivery of referring her to another obstetrician who would
     offer her that option.  Had Mrs. Mane undergone an elective c-section rather than an
19        induction and subsequent crash c-section as she did, there would have been no uterine
     rupture with resulting injuries to Angelina Morgan (neurologic) and Jana
20        (hysterectomy).

21   (Mem. Supp. Mot. Expenses & Fees, Ex. 3 at 1-2.)

22        On January 20, 2006, the United States served its Second Request for Admissions Propounded

23   To Plaintiffs. On February 23, 2006, Plaintiffs served their Response to the Second Request For

24   Admissions Propounded To Plaintiffs. The pertinent requests and responses are as follows:

25        **Request No. 12:**
     Dr. Mary Meyers offered Plaintiff Jana Larsen Mane the option of delivering her baby
26        by caesarian section.
     **Response to Request No. 12**
27        This request is objected to as vague and ambiguous as to time.  Without waiving those
     objections, Plaintiffs respond as follows: Deny.
28        . . . .
     **Request No. 15**
     Plaintiff Jana Larsen Mane told Dr. Meyers that she agreed to deliver her baby

vaginally.
**<u>Response to Request No. 15</u>**
This requested [sic] to as vague and ambiguous as to time.  However, without waving that objection, Plaintiff responds as follows: Plaintiff Jana Larsen Mane emphasized to Dr. Meyers that she wanted a cesarean section.

(Mem. Supp. Mot. Expenses & Fees, Ex. 5 at 2-3.)

On April 14, 2006, Defendant deposed Dr. Balducci in Phoenix, Arizona.  Dr. Balducci testified that he maintained his opinion that Dr. Meyers breached the applicable standard of care.  (Mem. Supp. Mot. Expenses & Fees, Ex. 6 ("Balducci Dep.") at 12-13.)  When opposing counsel read the above-quoted portions of Ms. Mane's deposition, Dr. Balducci stated that notwithstanding those portions of Ms. Mane's deposition, his opinion was consistent with Ms. Mane's testimony.  When asked "how the testimony [of Ms. Mane] that we just read together is consistent with your opinion [that Dr. Meyers breached the standard of care by not offering an elective caesarean section],"[2] Dr. Balducci responded:

> I could be wrong and made an error, but it was my recollection when Mrs. Mane had her deposition, on numerous occasions I believe she has asked to have a C-section and the doctor did not agree with her and did not send her out for a second opinion.  So I guess the best way to answer the question is it seems like there's a dichotomy in that deposition, from what I remember.

(Balducci Dep. at 26.)  On April 24, 2006, Plaintiffs deposed Dr. David Arthur Miller, M.D., the United States' liability expert.  Dr. Miller testified that Dr. Meyers did not breach the applicable standard of care.

On May 5, 2006, the United States filed its Motion for Summary Judgment (Doc. # 37), which was opposed by Plaintiffs (Doc. # 42).  On July 27, 2006, the Court granted summary judgment because, based upon the evidence submitted, no reasonable jury could find that Dr. Meyers breached the applicable standard of care.  (Doc. # 51.)  In so holding, the Court found:

> According to Jana Mane, when she communicated her desire to undergo a caesarean section to Dr. Meyers, Dr. Meyers explained to her that a caesarean section was not medically indicated because her herpes outbreak would not pose risk to the baby in the

---

[2]  Counsel had just read Dr. Balducci the following passage from Ms. Mane's deposition: I had broken out with a virus and I told [Dr. Meyers] that I wanted a cesarean.  And [Dr. Meyers] said that she thought that it was still a good idea to have the baby vaginally, anyway . . . and she thought there would be no problem with still having the baby vaginally, even though I broke out with the virus.  And I was very upset, and [Dr. Meyers] said, 'Okay, I'll give you the cesarean if you want one.'
(Mane Dep. at 54-55.)

1    course of a vaginal delivery. Jana Mane further testified that Dr. Meyers nevertheless
2    offered her a caesarean section. Jana Mane also testified that once she had been reassured 'that I could still have the baby vaginally,' she agreed to do so.

3  (Order Granting Summ. J. at 10 (quoting Mane Dep. at 55).) With respect to the opinion of Plaintiff's

4  expert, the Court stated: "Dr. Balducci's opinion that Dr. Meyers breached the standard of care fails

5  to account for the fact that Dr. Meyers offered Jana Mane a caesarean section, and that agreement

6  between doctor and patient was reached." (Order Granting Summ. J. at 12.)

7        On August 31, 2006, after Judgment was entered, the United States filed its Motion for

8  Expenses and Fees (Doc. # 63), brought pursuant to Federal Rule of Civil Procedure 37(c)(2),

9  "seek[ing] to recover its expense and attorneys' fees in proving the truth of Requests for Admission

10  which Plaintiffs failed to admit." (Mem. Supp. Mot. Expenses & Fees at 1.) Specifically, the United

11  States asks for $24,784.17 in fees and expenses related to taking the depositions of Dr. Balducci and

12  Dr. Miller, and preparing the Motion for Summary Judgment and related filings. Plaintiffs oppose the

13  Motion, arguing that sanctions are not allowed pursuant to the terms of Rule 37(c)(2), and even if they

14  were, the United States is contractually prohibited from seeking sanctions in this case. (Doc. # 72.)

15  Because the Court finds that sanctions cannot be awarded pursuant to the terms of Rule 37(c)(2), the

16  Court does not reach Plaintiffs' other argument that the United States is contractually prohibited from

17  seeking sanctions.

18                         **DISCUSSION**

19    Federal Rule of Civil Procedure 37(c)(2) provides in relevant part:

20      If a party fails to admit . . . the truth of any matter as requested under Rule 36, and if
21      the party requesting the admissions thereafter proves . . . the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the
22      reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (A) the request was held
23      objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to
24      admit.

25  Fed. R. Civ. P. 37(c)(2). "The rule mandates an award of expenses unless an exception applies."

26  *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994). Here, two exceptions are implicated:

27  Rule 37(c)(2)(B) ("the admission sought was of no substantial importance") and Rule 37(c)(2)(C)

28  ("the party failing to admit had reasonable ground to believe that the party might prevail on the

matter").  The decision whether to grant Rule 37(c) sanctions is committed to the discretion of the Court.  *See Marchand*, 22 F.3d at 936.

The United States contends that Ms. Mane's deposition testimony, quoted above, established both that Dr. Meyers offered Ms. Mane the option of delivering her baby by caesarian section, and that Ms. Mane told Dr. Meyers that she agreed to deliver her baby vaginally.  (*See* Mane. Dep. at 54-55.) Because of this, the United States argues that Plaintiffs had no basis for denying the requests to admit those two facts.  According to the United States: "Defendant's admission requests Nos. 12 and 15 should have been admitted because there was no reasonable basis to deny them.  Had Plaintiffs admitted Requests Nos. 12 and 15, as they properly should have, this case would have concluded with a voluntary dismissal.  Instead, Plaintiffs' disregarded their obligations under Fed. R. Civ. P. 36 necessitating costly additional discovery and a summary judgment motion.  Defendant is therefore entitled to its costs and an award of attorneys' fees."  (Mem. Supp. Mot. Expenses & Fees at 7.)

This argument is not persuasive.  Even if the Court were to find that Plaintiffs had no reasonable basis for denying admission request Nos. 12 and 15, the United States has failed to demonstrate that, had Plaintiffs admitted Nos. 12 and 15, "this case would have concluded with a voluntary dismissal."  (Mem. Supp. Mot. Expenses & Fees at 7.)  Ms. Mane was deposed in August of 2004.  At that point, the United States had uncontroverted evidence showing each of the facts requested by Nos. 12 and 15.  Indeed, in the Order Granting Summary Judgment, issued in May of 2006, the Court relied solely on Ms. Mane's deposition to find the absence of any genuine issue of fact with respect to the two requested facts.  (*See* Order Granting Summ. J. at 10 (quoting Mane Dep. at 55).)  In other words, had Plaintiffs admitted request Nos. 12 and 15 when they were served in January of 2006, the United States would have gained nothing that it did not already have.  If Plaintiffs did not move for voluntary dismissal after Ms. Mane's deposition in 2004, there is no basis for the United States' belief that Plaintiffs would have so moved had Plaintiffs admitted the requested facts in 2006. Instead, even if the requests had been admitted, it appears likely the United States nonetheless would have had to bring a motion for summary judgment.  And even if the requests had been admitted, the resultant order granting summary judgment would have been substantially the same as the one the Court actually issued.  Therefore, within the context of this case, Plaintiffs' failure to admit request

Nos. 12 and 15, "was of no substantial importance," and as such, cannot be the basis of an award of fees and expenses pursuant to Rule 37(c).  Fed. R. Civ. P. 37(c)(2) ("The court shall make the order [requiring the other party to pay the fees and expenses incurred in proving the matter requested] *unless it finds that . . . (B) the admission sought was of no substantial importance. . . .*") (emphasis added).

Rule 37(c) sanctions are inappropriate for the additional reason that Plaintiffs "had reasonable ground to believe that [they] might prevail on the matter."  Fed. R. Civ. P. 37(c)(2) ("The court shall make the order [requiring the other party to pay the fees and expenses incurred in proving the matter requested] *unless it finds that . . . (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter. . . .*") (emphasis added).  "[T]he true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." *Marchand*, 22 F.3d at 937 (quoting Fed. R. Civ. P. 37(c), Advisory Committee Notes on 1970 Amendment).

Although the Court ultimately found that there was no genuine issue as to whether Dr. Meyers offered Ms. Mane the option of delivering her baby by caesarian section (i.e., request No. 12) and whether Ms. Mane agreed to deliver her baby vaginally (i.e., request No. 15), Plaintiffs acted reasonably in believing that they might prevail at the summary judgment stage on those issues.  Ms. Mane testified in her deposition that she asked for a caesarian section "'[t]hroughout the whole time of going'" to prenatal care.  (Order Granting Summ. J. at 2 (quoting Mane Dep. at 46-47).)  She also testified that Dr. Mane told her, "'I can't give every 41-year-old woman a C-section that asks for one.'"  (Order Granting Summ. J. at 11 (quoting Mane Dep. at 32).)  Although these statements ultimately were not sufficient to create a genuine issue of material fact, Plaintiffs acted reasonably in believing that they might.  In addition, Dr. Balducci's expert report, which was based in part on his review of Ms. Mane's deposition, could reasonably be viewed as offering support to Plaintiffs' efforts to survive summary judgment.[3]  Therefore, because Plaintiffs "had reasonable ground to believe that [they] might prevail on the matter," Rule 37(c) sanctions are inappropriate.

---

[3]  Although the Ninth Circuit has stated that "we cannot accept a per se rule that reliance on an expert opinion provides a reasonable ground for a party to believe he would prevail at trial," *Marchand*, 22 F.3d at 937, this does not preclude a party's reliance on an expert report, combined with reliance on other evidence, from supplying a reasonable ground for a party to believe he would prevail at trial.

1

## CONCLUSION

2      Because the requested admissions at issue were "of no substantial importance," Fed. R. Civ.

3  P. 37(c)(2)(B), and because Plaintiffs "had reasonable ground to believe that [they] might prevail on

4  the matter," Fed. R. Civ. P. 37(c)(2)(C), the United States' Motion for Expenses and Fees (Doc. # 63)

5  is **DENIED**.

6  DATED:  March 21, 2007

7

**WILLIAM Q. HAYES**
United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28